Mr. Kuttner, are you ready? I'm going to please the Court, Ms. Corcoran and Mr. Brackett. As the Court knows, this is an application denial by various parties. Excuse me, Mr. Kuttner. Will you be reserving rebuttal time? Pardon? Five minutes. Thank you. This is a denial by various arbiters, the District Court included, for child benefits from the deceased wager. I'd just like to read one portion of the only judge who heard live witnesses, and that was the administrative law judge. It says this is a very, the case where medical scientific technology has advanced faster than the regulatory process. I start by noting that I find fully credible all the testimony here, by the children's mother, by friends who also testified, and by, and or submitted supporting statements. It is clear that this is a very sympathetic case with nothing but the highest intentions involved. Skipping a paragraph, it says there is little doubt also that the equity supports the claimant's applications, and that a favorable decision would not be inconsistent with the intention of the statute. However, the court found that it was up to the social security agency to alter their policy. I'd like to, I know your honors are familiar with the contentions in the brief. It's uncontroverted that the children in question were the biological children of the deceased wager. And the first issue in controversy is, all of the witnesses and all of the uncontroverted exhibits show that the deceased wage earner was in fact not a domiciliary of Florida. And that is the basis of the holding of the administrative law judge. What is it, counsel, where would he be domiciled? I see you're arguing Washington State, which I quite frankly don't get. He lived in Florida. He talked about going to New Jersey, but he lived in Florida. He did his will in Florida. Why not Florida? Well, very simply because every court, Supreme Court in Mississippi banned the Choctaw Indians versus Heufel, which is the case Justice Brennan decided. The agency, and regrettably the court below, cited that case to say that if someone's residence is in a state, that's sufficient. And they've gone so far now as to say regardless of what period of time, you can be there for a week. But Justice Brennan said just the opposite. He said that residence is not domiciled. He says specifically, domicile is established by the physical presence in a place in connection with a certain state of mind concerning one's intent to, that's what the agency said, with one's intent to remain there. He actually said domicile is not necessarily synonymous with residence. He said one can reside in one place but be domiciled in another. And most important, one acquires a domicile of origin at birth. Let me ask you, if we disagree with you and apply Florida law, Florida intestacy law, do you have a leg to stand on? If we disagree with you and find that, or agree with the district court that Florida law should apply, the Florida intestacy law, do you have a leg to stand on? Would I agree with that? If we find that Florida law applies, do you lose? No, I do not lose under any circumstance. If Florida intestacy law applies, you do lose, do you not? Do I agree that Florida law applies? No, no, if we find that Florida law applies. Do I lose? Yes. Could you explain why? Of course. I have a number of questions that have nothing to do with domicile, which I understand is a significant issue for you. I'm happy, of course, to answer any questions. You asked why, and if Florida law were to apply, Florida law, as even the person who wrote the memo on which the court, ALJ, relied, Florida law, there is a will here. The will does not provide for after conceived children. If there was a will that provided, you would prevail. I can deal with just the will. There is no question that the twins involved are the children of the deceased. The first family definition says the following. There is already one child born at the time this will is written. Where does the will provide for a child that has not been conceived yet? What provision in the will provides? My descendants, for purposes of article 5 and 6, shall mean only children born to me as a result of my marriage to Karen Capote. These children, remember the one child, Devin, was already born. So that the children that were born as a result of the marriage to Karen Capote. Further, the next specific paragraph 2.1B says, knowing that there is already a bequest and a trust to Devin, 2.1B says, give something to survive me to the wife. I give all those items to those of my children who survive me in share. Now why provide for children if you don't intend to include the after-born children? I'm going to have to stop you here and move you to another area because we do have some questions on that area. I grant you, and your emphasis has been on domicile, and I grant you that if we were to get to domicile it is a domicile at all. My question is the statutory language, and essentially what the 9th Circuit held in Gillett-Netting with reference to the definition of child. 402D1 says every child as defined in 416E. 416E says child means the child or legally adopted child of an individual. There is no dispute here that the twins are the biological children of the wage earner. Where does it say in 416E or 402D to go to 416H? 416E we would urge as the Circuit Court of Appeals of the 9th Circuit in Gillett-Netting held that 416E would include a biological child and that you don't go to 416H unless parentage is disputed, which it isn't here. This is the only case, Judge Barrett, where the parents signed consent, the father left a clause, which is in the record at page 27, which bequeathed to the children that may be born as a result of the in vitro fertilization. Are you back to the will again? No, Your Honor. I'm not back to the will. I'm back to the record, page 47, which says, in order to answer your question, it says I acknowledge any child born to us conceived by use of our embryo shall in all respects be natural children and are the heirs of our bodies and shall be considered in all respects our children and for all purposes, including but not limited to the descent of property, the child of our bodies. So a year prior to drafting the will in which children are mentioned and two years prior to his death, he's already signed a notarized statement. But the notarized statement part, there is no argument that the commissioner is making that these children are not the children of the wager. Parentage is not in dispute. Right. So my question, and I will certainly ask the government, how do they get to, how do we even get to H2 in this narrow situation? You get to it in all due respect. Your answer is we don't get to it. Under Gillett-Netting, the Ninth Circuit held that 416E, they are children. They are children under 416E. You don't get to 416H2. That's a good question for you. Just say yes. I don't think you get to 416H2. I don't think you get to 416H2. That's right. That's what I was thinking too. No, you never get to it because it only comes into play when parentage isn't disputed. Well, that's what the Ninth Circuit says. Let me ask you a question then too. Let's assume that you don't have to get to 416H. There are two things. You have to be a child of the wage earner and you have to be dependent on the wage earner at the time of the wage earner's passing. What's the evidence that these after-conceived children were dependent on the wage earner at the time of his passing? Under Jimenez v. Weinberger, the holding was that they would be deemed dependent at the time of the death. The ALJ and the District Court didn't reach that issue of dependency, did it? They did not reach the issue of whether the twins were deemed dependent or dependent. The only issue that they decided was the issue of child, right? Having determined in Jimenez that the child was legitimate, the Supreme Court held that the child was indeed deemed dependent. But Judge Van Aske asked you where is the evidence there? They also were deemed dependent and you didn't have to prove dependency. But even the Ninth Circuit in a later decision after Gillett-Netting in the Ninth Circuit, Judge Van Aske, Bernoff, this is totally different. Our case, there are parents who signed in writing that they wanted in vitro fertilization. They signed in writing that these children who would be born would be their heir. They said their property would go to them. Bernoff was a case where after the person was dead and gave no evidence, the child would be their heir. I mean, that's not consent of the wage earner. Can I ask you, I mean, I guess I'll anticipate what the government's going to argue here. I mean, if we start, as Judge Barry rightfully points out at 416E, I mean, it basically defines child as child of an individual. Not exactly. I mean, as they say from grade school, you can't really define something by child equals child. It doesn't tell you a whole lot. But for 416H, A2 says in determining whether the applicant's a child of a fully insured individual for purposes of the subtitle. Is that how we get to Section H? Shouldn't we apply Section H when there's sort of a deeper question as to... And as a district court in Beeler, which is going to the circuit in Iowa, is presently before that circuit. You only get to H when there is a dispute in parentage. And it's a method that those two courts, at least, disapproved and said that the clear language of 402 and 416E was trying... Commissioner Astru was attempting to get around the clear language by going to 416A. I mean, shall we give any... The court had before it this language that the children would be recognized, they would be the heirs of the bodies, it's a notarized statement, and that they would get property. Then we have the will, which says, even if you don't... I sense you may not agree with the Ninth Circuit. Even without that, this will in numerous places refers to children other than the one child born. It's not very artfully drawn. It says that... You would get to the will if Florida intestacy law applies, because that is an exception to the exclusion under Florida intestacy law. But you don't want to get to Florida intestacy law to begin with. I think this notarized statement that I'm leaving these things to my after-born children would suffice in Florida. I don't know. All right, we'll get you back on rebuttal, Mr. Kottner. Ms. Corcoran. My name is Kelsey Brown Corcoran. I'm here on behalf of the Social Security Administration. I'd like to start with the agency's interpretation of the act, because we are asking this court to take a different position than that of the Ninth Circuit. We know that circuit splits are not entered lightly. Specifically, you should address how we get to age. Since the Gillette-Netting decision was decided in 2004, six district courts have been presented with this issue. Five of them have affirmed the agency's position and rejected the Ninth Circuit's position. The sixth case, Beeler v. Estrue, is currently on appeal in the Eighth Circuit. We have argument on December 17th. One of the other cases affirming the agency's position is now on appeal in the Fourth Circuit. That's Shaper v. Estrue, and we have argument in that case at the end of January. Essentially, it was an issue of first impression in the Ninth Circuit in 2004. We had a six-year hiatus in the appellate courts, and now this court, the Fourth Circuit, and the Eighth Circuit are all facing the issue at the same time. I'm sorry. I've missed the last sentence. I was just saying that there was Gillette-Netting in 2004, a six-year hiatus, and now we have this court, the Fourth Circuit, and the Eighth Circuit all facing the issue at the same time. The crux of the interpretive task facing the agency was figuring out how Congress intended 402D1's cross-reference to 416E1 to interact with 416H2A. This is not a new question that arises out of the posthumous reproduction cases. It goes back to 1939 when the survivor benefits were first added to the Social Security Act. Your adversary says it has to do with when there's a question of parentage, which you can see there's not in this case. Yes. The agency at that time, in 1939, looked at these three provisions and very reasonably determined that H2A means what it says, that the agency shall... Yes, and Congress said because at that time there was no effective means to scientifically prove a parent-child relationship. Therefore, Congress determined that the primary way to determine the parent-child relationship was eligibility to inherit under state law. But here there is not that question. There is no dispute as to parent-child relationship. You don't need to get to H2. There is nothing to determine. Correct? Yes, and I think your point about congressional intent is exactly why Gillette-Netting is wrong. What we're dealing with is the act as it was written in 1939. Congress has not chosen to go back and amend the way it was set up. But in 1939 you had the former section 202C and the former section 209K, which are the same as 401D and 416E. So you had all three sections then. And Congress spoke about the H section and it talked about we need this because there's no way to scientifically determine parent-child relationship. That's not an issue here. And I just question the very title of the H section, quote, determination of family status. What has to be determined here? Family status is undisputed. But I think we do need to look at the congressional intent that you're talking about in 1939 because that's all we have. As the Gillette-Netting court recognized, Congress couldn't possibly have been thinking about posthumous reproduction at that time. To the agency's credit, it has not engaged in any legislating here. It has applied the law as it's written, applying the letter of the law. And since 1939, the agency has applied H2A to every application. And it's clear from 1939 to 1965, H2A was... That may be their practice, but how do we get there according to the text? Well, I think the best... 416E doesn't refer you to 416H. 416E is complete. That's it. That is the definition of child. I think the tricky part is that cross-reference in 402D1 to 416E1 and trying to figure out what that means. And the agency... And I think the best reading of that has to be that Congress was saying in 402D1, when we say child here, we're not trying to exclude the grandchildren, stepchildren, and adopted children that are under 416E1. It was in no way intended to preclude application of H2A. H2A was still going to apply. It's going to apply to those grandchildren, the stepchildren, everyone who's covered under E1. So the cross-reference in 402D1 is just to point out we're not just talking about children here. We're talking about all of the parties that fall under E1. You still have to go to H2A. How do we get to H2A? It's there, but what's the connection? Why do we need to go there? Here in a case where parentage is not disputed. The Ninth Circuit's position is untenable for a number of reasons, but I think the first one that goes to your question is that there is no basis anywhere in the Act for the notion that eligibility inquiries turn on whether parentage is disputed. There's no textual basis for that. And so it's essentially a fictional limitation placed on H2A by the Ninth Circuit in order to give H2A some meaning. Why does 416 have definitional sections for the word child in both 416E and 416H? 416E1 is intended to bring within the definition of child grandchildren, adopted children, and stepchildren under some circumstances. And those are laid out in 416E1. H2A is a separate provision. No, no. 416E1 says the term child means the child of legally or legally adopted child of an individual. I think the reason, if they had left that out, then they had just said... They didn't. And they didn't say for further definition, go to H2. Well, that certainly would have been helpful. Yeah, for your position. Yes, but the agency is faced with the Act as it's written, and they really have, I think, adopted the only possible interpretation that gives meaning to H2AE1 and E1. I think the only possible interpretation, and I'm just thinking aloud, is that there was no reason for H where you've got E unless there is... But then H would never apply. Unless there's a dispute as the parent is. There's no anchor for that in the text. And even if... We're talking about an agency... Okay, let me put it this way. The title of H, determination of family status. What has to be determined in this case? I'm not talking about a case where there is a sperm bank or a surrogate mother. In this case, where parentage is undisputed, what family status has to be determined? What is there to be determined? I think it's important to look to state and... No, no, no. What has to be determined? Whether there's a child-parent relationship under state law. There's no dispute, no. Where do you get the state law? 416 doesn't say anything about... What's the state in Texas? The law of the... You don't get the state law until you get to H2A. Right. But you don't get to H2A if there is no dispute as to parentage. The child-parent relationship here is not disputed. We're all asking the same question. So what do we have to determine under H2A as to family status? We have to determine whether there's a legal relationship between the child and the parent. And that's important because... But it's not disputed that there is a relationship. If that were significant, the biological relationship, then children of sperm donors would be... I excluded that. I excluded children of sperm donors. I excluded the surrogate mother. How are we excluding... Because there one has to determine family status. So I would not disagree with you that we go to H2. But I would say everyone would agree that a sperm donor is the biological father of the child. Yeah. And that's a similar situation to here. But is he the parent or is the father? Well, what the Ninth Circuit said is that the biological relationship... Sure. You get into that, you go into H2. I agree with you. I'm talking about where parentage is not in dispute, where we need not determine family status. With all due respect, I would say that that situation is not all that different than what we have here. We acknowledge a biological relationship. What we're saying, though, is despite the biological relationship, there is not a child-parent relationship within the meaning of state intestacy law. And that would be exactly the same as what you're dealing with a sperm donor. And again, we don't think Congress was actually thinking about any of this in 1939. So until Congress comes back and decides to amend the Act to address these circumstances, we're faced with the law as it is. But I think it would be very problematic to take the position that biology is sufficient. Because again, that's what's disputed. No. Biology would be sufficient only for the definition of child. Yes, but then you would... But then, yes. So that then leads you to the... But then you may need to go to H2 if indeed... Well, we've been... There are a lot of other questions. Yeah. But I do think under that reading, it would be very difficult to explain why the child of a sperm donor, or in a surrogacy situation, wouldn't then satisfy the child-parent relationship requirement. You're saying biology is biology. Well, because you're saying it would be a difficult question to answer. Therefore, I think you're answering the question because you're agreeing that parentage is in dispute. So you have to go to H2. It's not biological parentage. And that's the... But who is the parent? Who is the parent? And that's what H2 talks about. And who is the parent is a question of state law. Where the child or the parent, it says. So if there's a dispute as to who indeed is the parent, is it someone who buys sperm, the father, who buys sperm from another man? Is that the father? Or is it the donor? But that's where you get to H2. Yeah, and I think the problem with attempting to delineate in this way is that it's I agree with that. Congress wouldn't have been thinking about biology then because... I would imagine, I mean, the ALJ certainly was concerned about this issue. And it would be helpful if Congress returned to it. It would be helpful. And that is a question for me. The regulatory pot, is it bubbling in Washington? I'm not aware of Congress looking at that right now. And so, again, the agency is restrained by the law as it is. You're saying you have all these appeals going on. It's now a hot issue. Is it something the agency is going to want to clarify? Well, the agency's regulations are very clear. It's applying the law exactly the same to all applications. But the agency, in its supposed clarification of the law, hasn't answered my question of how do you get to H2 in the first place. Once you get to H2, it's easy. But how do you get there? Because there is nothing in E or in 402 that even refers to H2. Let me add this. To the extent that what we're talking right now about is what would Congress do now if it were thinking about it, I don't think it's clear at all that the policy concerns would go in favor of including these children. The purpose of Social Security benefits is to survivor benefits is to provide support in circumstances of unexpected loss. And here, by definition, posthumously conceived children are conceived with the knowledge that the deceased parent is not going to be providing financial support. Well, there is ample case law that says the purpose of the child survivor benefits is to replace support actually lost by the child when his or her parent dies or the support the child would have received, the anticipated support, had the parent not died. And there was no anticipated support. Well, it was anticipated here, the testimony here, is that they wanted to have a child even if that child was conceived after his death. That's the testimony. So that there is no reason to believe that that child would not have been supported as all of his other children are being supported. At the time of conception in any of these cases, the mother is aware that she will be single parenting. And Social Security is intended as an insurance program. And just as a matter of fiscal responsibility, when you're talking about an insurance program, it doesn't apply when you're making choices. We're dealing with, I guess, a certain set of moral hazards. You may be lapsing now into that other prong about dependency. Why isn't dependency an issue here? For the reason that I think Judge Barry pointed out. It hasn't been decided. Yeah, it wasn't decided by the agency here. The parent-child relationship tends to be the first inquiry. But doesn't that go to the policy question that you just raised there? If they are a dependent of the insured at the time of his passing, then the policy issue is answered. Well, yeah, and to the extent we're talking about policy concerns, we're basically speculating about what Congress would do. It hasn't done. Perhaps it would revamp the entire 402D as well as 416H. We don't know at this time. I just want to add also that we're not talking about a small number of cases. My understanding from the Social Security Administration is that they're at about 90 such applications at this point. I just want to ask that question, but I suppose it depends on how you define the cases. Here you have a case where parentage is undisputed. You know the facts here. But then you could have the sperm donor cases and someone who buys sperm. You could have the surrogate mother cases, and I suppose they're all lumped together into the 90. Or the Vernoff type situation. I think the 90 applications is a reference just to the posthumous conception cases. It does not include sperm donors or surrogates. But even Vernoff is a posthumous conception case. This is a posthumous conception case that was consented to by all involved. Yes, and that's been true in most of the cases. I don't know about Vernoff. He was not capable of consenting. He was dead. Steven in Florida and Vernoff are the two exceptions. But the rest of them, my understanding is that there has been similar circumstances as there were here. And so the Ninth Circuit's position, if it were adopted more widely, would lead to an increasing number of applications. And we're talking about a program with limited resources. Ninth Circuit is a huge jurisdiction, as we all know. How many applications have been approved under the Ninth Circuit? I don't know the answer to that. I think there's maybe been a couple. You have an acquiescence ruling. And I sense, correct me if I'm wrong, that you're waiting for another case to take up.  Did you ever go back on a petition for a re-hearing to the Ninth Circuit? Yes, and I don't think it's unusual to be denied under those circumstances. There was no circuit split. There was no internal circuit precedent that was at issue. Of course, just following the thought, if, for example, we were to find that the district court and the ALJ were wrong in determining that this was not a child under the definitional section, we would have to remand, would we not, so that the determination of dependency could be made? Yes, that's right. So that it really wouldn't go up right away. Yes, that's right. We've talked a lot about the policy issues, if Congress were to address this. And as I said before, Congress hasn't, so we're dealing with the 1939 law. But I think that the second point I want to emphasize is that even if the Ninth Circuit's position was plausible, and again, I explained why I don't think it is, but even if it were, the fatal flaw, I think, with the Ninth Circuit's position is that it didn't recognize that the agency's determination receives deference, the agency's interpretation. And I don't see how it's possible that the agency hasn't reasonably interpreted that. Well, now, hold on. We don't get there even until we find there's an ambiguity in the statute. And even to the Gillette-Netting Court recognized there was an ambiguity to the extent that Congress wasn't thinking about this in 1939. Well, they weren't thinking about this particular factual situation, but I don't think that that is the question in determining ambiguity. The question would be whether the statute is ambiguous. And I'm not entirely sure that it is. So would deference be afforded if it's not an ambiguous statute? Well, we're talking about an interpretation of the Act that dates back 70 years. And so from 1939 to 2004, the agency was applying H-2A to every single application, and no court had ever questioned it. But they're not telling, there's no way apparent to me how under the circumstances of this precise case they get to H-2. Yes, you have the regulations that date back to the 1970s. I don't think it had occurred to anyone that there was any other alternative way of interpreting it. No one had argued that. There weren't any cases about it. No one had challenged it. So we're not just talking about an interpretation that applies to those 90 applications. We're talking about an interpretation of the Act that has applied to every single application for 70 years. So to hold otherwise would be, I think, undermining 70 years of history where the agency has been very consistent. But the cases I've read, nobody yet has told me how you get to H-2A. I think you read H-2A as it's written, which says, So why do you have in 416 two separate definitions of child? I think 416E1 was intended to incorporate adopted stepchildren and grandchildren. And then H-2A was intended to apply to all cases. Where family status has to be determined. Family status always has to be determined. We don't have to find any facts if they're not in dispute. Let me point out also that in 1965 when Congress amended the Act, the Senate report specifically states that at that time whether or not an applicant was eligible for benefits turned on state and testicy law. So it's clear that Congress in 1965 agreed with the agency that H-2A was supposed to apply in all cases. I can agree with it that it's going to apply in a lot of cases. I can't define a lot. But I'm talking about the case we have before us. Well in 1965 Congress thought that it applied to all cases. The law hasn't changed. So if it applied to all cases in 1965 and 1939, it still has to apply to all cases in 2010 until Congress says otherwise. The beginning of 416H2A, I quoted it before, but in determining whether the applicant is the child or parent, blah, blah, blah, of a fully insured individual for purposes of this subtitle, can it be said maybe that this is a tool we can use to help determine what child means? Yes, I think that's right. And then another thing to point out was that in 1965 when Congress amended the act to provide additional ways of establishing a child-parent relationship, it added those provisions to H, not to E. So it's clear that the alternative mechanisms in H-3 are another way. I don't know what my point really is going to be at the end of the day. But yeah, if they had added them to E, I can understand it. Because there would be something in E to get you to H. So we have again the Senate report stating that H-2A was applying in all cases in that time. And what had happened was it had become clear that there were a number of children who were actually dependent on a deceased parent at the time of death and therefore fell within the act's purpose in terms of unexpected loss, but who were being excluded from benefits because their parents were not married. And they put them under H instead of E. So if the provisions in H are sufficient to establish a child-parent relationship, we're not talking there about disputed parents. But you see, that's the point. There's a situation where there was a question as to family status. Were they married? Question. Who knows? Or did they go through a ceremony that wasn't valid? That's what H-3 is all about, the alternatives which don't apply here. But for the same reason, that's why I'm suggesting that H-2 is the same situation. I'm over time, but I think the fact that we can have a vigorous debate about this is at the very least evidence that Chevron deference is applicable to the agency's interpretation. We're also talking about seminal ROC deference to the agency's regulations. As far as I see, the agency has concluded that you go to H-2, but they haven't interpreted it at all. They've just concluded you go to H-2. Well, we're talking about an interpretation that goes back to 1939, so the agency also wasn't thinking about disputed parentage. They have consistently applied the law, and they will consistently apply the law the way they interpreted it in 1939 until Congress changes it. What's your view on the dependency under the factual circumstances here? The agency didn't reach it, so I'm reluctant to speculate. You would get to state law, wouldn't you, on deemed dependency? Yeah, it depends. If this court were to remand on the ground that Gillette Netting applies because of a domicile in the 9th Circuit, that inquiry would be different than simply this court taking the same position as the 9th Circuit but applying it in the 3rd Circuit. If that were to happen, it would go on remand, and presumably the agency would be free to apply the interpretation of the dependency requirement that it's always applied, and then possibly that would come up later. And the domicile Mr. Kuttner disagrees would appear to be Florida. I'm happy to answer any questions about the equal protection. Thank you very much. We ask that this court affirm the agency's position. Thank you. Mr. Kuttner? Unless the court has specific additional questions, I'm going to waive the rebuttal. I think that's always a good idea. If there were to be a right to consent that can be passed on by Ms. Capato by will or by gift or something, in other words, can she give the sperm away? That's also governed by some 80 pages of consent in which the husband and wife sign before witnesses, and there are various options. It's in the record, of course. In some, the wife has that right to keep the sperm, and in this case, both husband and wife, knowing that they had a child who would be alone and they wanted to have siblings for the child, consented that the wife would use the sperm hopefully to have siblings for the child. I know that was not my question, but I think probably I'll leave my question. Anything else? Thank you very much. The case was extremely well argued. It's a difficult case. More difficult maybe than it appeared at first blush, but thank you very, very much. We will take it under advice.